IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

GRAHAM L. COVINGTON,                    )
and LORRAINE D. COVINGTON,              )
                                        )
            Plaintiffs,                 )      TC-MD 180158R
                                        )
      v.                                )
                                        )
MULTNOMAH COUNTY ASSESSOR,              )
                                        )
            Defendant.                  )      **DECISION**

Plaintiffs appealed a Board of Property Tax Appeals (BOPTA) Real Property Order, dated March 19, 2018, regarding account number R198226 (subject property), for the 2017-18 tax year. A trial was held on January 24, 2019, in the Oregon Tax Court. Graham Covington (Covington) appeared and testified on behalf of Plaintiffs. Barry Dayton and Shane Turner appeared on behalf of Defendant. Larry Brown (Brown), Oregon Registered Appraiser, testified as a witness on behalf of Defendant. Plaintiffs' Exhibits 1 to 15 were admitted over Defendant's objection. Defendant's Exhibits A and B were admitted without objection.

## I. STATEMENT OF FACTS

The subject property, built in 1929 and located in the hills above downtown Portland, is a single-family residence consisting of 3,140 square feet of living space. (Def's Ex A at 6.) The property is a triangle shaped lot on a gently sloped hill with some limited views of the city below. The property has retained its historical nature and has not been substantially updated. The first floor has a living room, family room, dining room, kitchen, full bath, an enclosed patio, and a sun room. (Def's Ex A at 6.) Above grade there is a master bedroom, two additional bedrooms, and two full bathrooms. The basement has 780 square feet of finished living space, 180 square feet of storage, and 280 square feet of unfished basement. There is a 420 square foot

detached garage with a storage room and a full bath. (*Id* at 7.) On March 19, 2018, BOPTA mailed Plaintiffs a Real Property Order sustaining Defendant's real market value and assessed values for the 2017-18 tax year at $660,470 and $569,890 respectively. (Ptfs' Ex 13.)

Covington testified that he purchased the subject property in 1976 primarily for its view of the city. He testified that other than the view, the house has no other appealing amenities; its rooms are small, as is the kitchen. Twenty years after Plaintiffs purchased the home an individual purchased a property just east and downhill from Plaintiffs' house. As the individual began to build a house, a dispute regarding the height of the building arose between Plaintiffs, the City of Portland, and the individual building the house. Covington testified that the city allowed the house to be built despite violating building height restrictions. Covington testified that the new construction partially obstructed his view. Subsequently, the same individual purchased the house next door to the newly constructed house and Covington testified that again the city allowed that the house to be built exceeding height restrictions; further obstructing Plaintiffs' view.

Plaintiffs presented a letter from Daphne Cooluris, a real estate broker who lives in Plaintiffs' neighborhood. Ms. Cooluris wrote that Plaintiffs' small kitchen, closets and bathrooms would be an impediment to a sale of the subject property. (Ptf's Ex 4.) Ms. Cooluris also wrote that she has "a city view, which I value at $100,000." *Id.* She further explained that "the Covington's used to have a city view … [but] have now lost their view." *Id.* Plaintiffs request a reduction of $100,000 to the real market value of the subject property based on the loss of their view.

Brown testified that he has been an appraiser since 1996 and his work history includes performing appraisals for the San Luis Obispo Assessor's Office in California and has been working for Defendant since September 2017. Brown testified that he performed an appraisal of

the subject property considering all three valuation methods: the cost, sales comparison, and income approaches. In considering the sale comparison approach he considered 72 sales in the area surrounding the subject property and pared those down to 14 potential comparable properties. After viewing each of those properties, Brown selected the five most comparable properties with a similar design, views, and similarly sized kitchens and bathrooms which he included in his appraisal report. (Def's Ex A.) Brown testified that he did not include properties with city views because to do so he would have to perform a "paired analysis." Such an analysis would require a comparison of similar properties; one with a view and the other without so he could isolate the effect of the view. Brown testified he could not locate properties to isolate only that one feature and that selecting properties without views reflects his belief that Plaintiffs do not have a marketable city view.

Brown testified that he considered comparable one and two to be more significant to his conclusion of value for the subject property. Comparable one is located approximately 0.28 mile from the subject property. It is similar in age and sold for $685,500 on July 6, 2016. Brown adjusted that sale by $7,500 trending for the date of sale, $15,000 for one less above grade full bath, $46,960 for a smaller above grade square footage, and made upward adjustments for smaller finished and unfinished basement square footage. Brown reduced $5,000 for one additional below grade bath. Brown also adjusted by $15,000 for one less garage space and $5,000 because the subject has a full bathroom below the garage. Brown's adjusted sales price of comparable one is $782,500.

Comparable two is located approximately 0.31 mile from the subject property. It is of similar size and age and was sold for $875,000 on September 12, 2016. Brown adjusted the price by $6,000 for the date of sale, reduced the price by $20,480 for a larger above grade living

area, reduced the price for having a full-bath instead of a half-bath above grade and reduced the price by $43,440 for a larger finished basement. Brown increased the price by $8,280 for not having an unfinished basement and added $5,000 for lack of a full-bathroom below the garage. Brown's adjustment sales price of comparable #2 is $825,500.

The largest adjustment Brown made was for comparable three, in which he adjusted downward by $50,000 because that property had a detached studio. Comparables four and five were more dissimilar. Comparable four sale was used to bracket the property on the lower end and comparable five for the higher end. Additionally, comparable five, which sold for $839,900 and was adjusted by Brown to $848,500, had its sale nearest to the assessment date. Brown found the adjusted sales prices from his comparables ranged from $723,500 to a high of $850,500. (*Id*. at 12.) Ultimately, Brown's opinion of value for the subject property as of the assessment date using the market approach was $800,000.

Brown considered but rejected using the cost approach because of the age of the subject property. Brown also considered but rejected using the income approach because "the subject property is a single family residential property that is not typically used as an investor income asset, but rather is typically owner occupied." (Def's Ex A at 13.)

## II. ANALYSIS

The issue for this case is the real market value of the subject property for the 2017-18 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD 020869D, WL 21263620 at *2 (Or Tax M Div Mar 26, 2003) (citations omitted). Real market value is defined in ORS 308.205(1),[1] which states:

---

[1] The court's references to the Oregon Revised Statutes are to 2015.

"Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2017-18 tax year is January 1, 2017. ORS 308.007; ORS 308.210. The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). There are three approaches to value that must be considered: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308-0240(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.*

The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management Corp v. Lane County Assessor*, TC-MD 060354D, WL 1068455 at *3 (Or Tax M Div Apr 3, 2007) (citations omitted). "The court looks for arm's length sale transactions of property similar in size, quality, age and location" to the property. *Richardson*, WL 21263620 at *3. "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, may be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions. When non-typical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.), the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the non-typical market condition." OAR 150-308-0240(2)(c).

Plaintiffs bear the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

"[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

Plaintiffs argue that their property's value was reduced by $100,000 based on the loss of their view. However, Plaintiffs failed to present any competent evidence of the real market value of their home. Instead, Plaintiffs based their valuation on a letter from a realtor in the neighborhood who opined that her view was worth $100,000. That opinion presented no supporting evidence and since she did not appear to testify, her opinion is given little weight. Even if the court were to take the realtor's statement at face value, it only says *her* view is worth $100,000; it does not state what Plaintiffs' view would be worth. Further, even if the court were to accept the $100,000 reduction in value based on Plaintiffs' loss of their view, the court would still have to determine what value that should be reduced from. Plaintiffs would say from the real market value on the tax roll. But that theory does not match the laws and rules of valuation in this state. Plaintiffs' approach to valuation is not one of the three approaches of value described in OAR 150-308-0240(2)(a). The court finds that Plaintiffs have failed to carry their burden of proof as to the value of the subject property.

"[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. In this case Defendant presented evidence of value greater than the BOPTA value, and thus its evidence must be considered. Defendant bears the burden of proof on its request to increase the 2017-18 real market value.

Brown relied upon five sales in close proximity to the subject property. Two of properties, comparables one and two, were of similar age, size, and did not have appreciable views of the city. While Plaintiffs criticize Defendant's appraisal for not selecting properties with a view, Brown's approach appears reasonable, in that he selected properties without views that were similar to the subject property. Brown made specific adjustments for sale date, for rooms and bathrooms according to the level of location, and for other amenities. The court finds Brown's sales comparison approach persuasive because the properties he selected are similar to the subject and located in the proximate area. Brown's adjustments are reasonable and adequately supported. Thus, the court adopts Brown's real market value for the subject property at $800,000 as of January 1, 2017.

### III. CONCLUSION

After careful consideration, the court concludes that the subject property's 2017-18 real market value was $800,000. Now, therefore,

IT IS THE DECISION OF THIS COURT that the 2017-18 real market value of property identified as Account R198226 was $800,000.

Dated this ____ day of April 2019.

RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Davis and entered on April 8, 2019.*